IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02718-REB-KLM

LELAND R. SHARPES, Trustee, as Trustee for the Leland R. Sharpes and Jocelyn B.
Sharpes Living Trust, and
JOCELYN B. SHARPES, Trustee, as Trustee for the Leland R. Sharpes and Jocelyn B.
Sharpes Living Trust,

        Plaintiffs,

v.

JPMORGAN CHASE & CO., a Delaware corporation,
U.S. BANK NATIONAL ASSOCIATION, Trustee, as Trustee for the C-BASS Mortgage
Loan Asset-Backed Certificates, Series 2007-MXI,
LITTON LOAN SERVICING, LP, a Delaware limited partnership, and
OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,

        Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on the **Motion to Dismiss Pursuant to Fed. R. Civ.**

**P. 12(b)(6)** [#13],[1] filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Litton Loan

Servicing LP ("Litton"), and U.S. Bank National Association, as Trustee for the C-BASS

Mortgage Loan Asset-Backed Certificates, Series 2007-MX1 ("U.S. Bank as Trustee")

(collectively, the "Ocwen Defendants"); and on the **Motion to Dismiss Plaintiffs' Verified**

**Complaint With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6)** [#14],

filed by Defendant JPMorgan Chase Bank, N.A. ("Chase").  Plaintiffs filed Responses [#16,

_____

     [1] [#13] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  The Court uses this convention throughout this Recommendation.

#17, #19] in opposition to the Motions, and Defendants filed Replies [#28, #29].  Pursuant

to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c), the Motions have been referred to the

undersigned for a recommendation regarding disposition.  *See Order Referring Case* [#46].

The Court has reviewed the Motions, the Responses, the Replies, the entire docket, and

the applicable law, and is sufficiently advised in the premises.  For the reasons set forth

below, the Court respectfully **RECOMMENDS** that the Motions [#13, #14] be **GRANTED**.

## I. Background[2]

On August 18, 2006, Plaintiffs executed a Deed of Trust and initial mortgage note

(the "Note") in connection with purchasing a piece of real property situated in Larimer

County, Colorado at 245 W. 4th St, Loveland CO 80537 (the "Property").  *Compl.* [#1] ¶ 28.

Chase was the lender on the mortgage.  *Id.*

Chase recorded the Deed of Trust on August 22, 2006, with the county recorder.

*Id.*; *Ex. A to Compl.* [#1-1] at 1-21; *Ex. B to Compl.* [#1-1] at 22-24.  The Deed of Trust

designated the lender, Chase, as the beneficiary of the Deed of Trust.  *Ex. A to Compl.* [#1-

1] at 2 ¶ C, 3 ¶ D, 13 ¶ 20.  The Deed of Trust states in part:

> The Note or a partial interest in the Note (together with this Security
> Instrument [Deed of Trust]) can be sold one or more times without prior
> notice to Borrower.  A sale might result in a change in the entity (known as
> the "Loan Servicer") that collects Periodic Payments due under the Note and
> this Security Instrument and performs other mortgage loan servicing
> obligations under the Note, this Security Instrument, and Applicable Law.
> There also might be one or more changes of the Loan Servicer unrelated to
> a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be
> given written notice of the change which will state the name and address of

---

[2] "In ascertaining whether plaintiff's proposed amended complaint is likely to survive a motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, and the allegations in the complaint must be accepted as true."  *See Murray v. Sevier*, 156 F.R.D. 235, 238 (D. Kan. 1994).

the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

*Id.* at 13 ¶ 20. The Deed of Trust further specifies that payments by the borrowers were to be made to the lender. *Id.* at 5 ¶ 1.

The Note is in the amount of $238,000.00 and includes an initial interest rate of 7.625%. *Ex. B to Compl.* [#1-1] at 23 ¶¶ 1-2. The Note provides that Plaintiffs' first payment was due on October 1, 2006, and that the last payment is due on September 1, 2021, in the form of a balloon payment of the remainder of the principal and interest due and owing at that time. *Id.* at 23 ¶ 3.

On the original execution date of the Deed of Trust and Note, i.e., August 18, 2006, Chase executed a document transferring the servicing rights to JPMorgan Bank, c/o Chase Home Finance LLC. *Ex. C to Compl.* [#1-1] at 25-27. Despite the fact that Chase was the lender on the Note and Deed of Trust, Plaintiffs assert that Chase also had to be designated as the loan servicer in order to transfer servicing to JPMorgan Bank.[3] *Compl.* [#1] ¶ 37.

On February 5, 2007, JPMorgan Chase aka Chase Home Finance LLC executed a document transferring servicing rights to Defendant Litton. *Ex. D to Compl.* [#1-1] at 28-30. Plaintiffs assert that because "JPMorgan Chase did not legally receive the servicing

---

[3] Plaintiffs provide no factual or legal authority for their position that Chase was required to be designated as a loan servicer before transferring service of the loan, as discussed more fully below.

rights from Chase, it could not legally transfer those rights to Litton." *Compl.* [#1] ¶ 38.  In April 2007, Plaintiffs discovered that they had been and were continuing to be charged "forced insurance" and escrow for tax payments by Defendant Litton.  *Id.* ¶ 42.  They wrote to Defendant Litton to stop the escrow collection and to get a refund of unnecessary payments already collected by Defendant Litton.  *Id.*; *Ex. E to Compl.* [#1-1] at 31-41.  In June 2007, Plaintiffs received two letters from Defendant Litton.  *Compl.* [#1] ¶ 43; *Ex. F to Compl.* [#1-1] at 42-44.  The first letter, dated June 19, 2007, acknowledged receipt of Plaintiffs "recent communication."  *Id.* at 43.  The second letter, dated June 26, 2007, acknowledged Defendant Litton's receipt of a letter Plaintiffs had sent over a month-and-a-half earlier and removed the insurance and tax escrow account, but did nothing to resolve the escrow payments Defendant Litton had allegedly incorrectly collected previously.  *Id.* at 44.

In December 2007, Goldman Sachs purchased Litton from C-Bass.  *Id.* ¶ 39.  In June 2011, Goldman Sachs sold Litton to Ocwen Financial Corp. ("Ocwen Corp.").  *Id.* Ocwen Corp. renamed Litton as "Ocwen Loan Servicing LLC," i.e., Defendant Ocwen in this lawsuit.  *Id.*  Plaintiffs assert that "[t]here is no document transferring servicing from Litton to Ocwen."  *Id.* ¶ 40.

Plaintiffs assert that the original Note was packaged into a derivative mortgage trust established by C-BASS, and that the trustee of the derivative mortgage trust was Defendant U.S. Bank.  *Id.* ¶ 41.  Plaintiffs allege that the original Note has disappeared, and that the alleged current Note holder, Defendant U.S. Bank as Trustee, does not have the Note.  *Id.*  Plaintiffs further allege that no party to this lawsuit can produce the original Note. *Id.*  They assert, in short, that there is no document transferring beneficial interest in the

Property from Chase to any party, and there is no document transferring beneficial interest to Defendant U.S. Bank as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-MX1. *Id.*

On December 18, 2012, Plaintiffs created the Leland R. Sharpes and Jocelyn B. Sharpes Living Trust. *Ex. G to Compl.* [#1-1] at 45-46. On March 19, 2013, the plaintiffs quit-claimed the Property into the Leland R. Sharpes and Jocelyn B. Sharpes Living Trust. *Ex. H to Compl.* [#1-1] at 47-48. In mid-July 2013, Plaintiffs received an undated demand-for-payment letter from Defendant Ocwen. *Ex. I to Compl.* [#1-1] at 49-50. In late October 2013, Plaintiffs received four letters from Defendant Ocwen. The first letter contained a request from Defendant Ocwen for more financial information. *Compl.* [#1] ¶ 47.[4] *Ex. J to Compl.* [#1-1] at 51-52. The second letter purportedly resolved another "forced insurance" problem they had encountered. *Ex. K to Compl.* [#1-1] at 53-54. The third letter returned a payment made by Plaintiffs to Ocwen despite Plaintiffs having agreed on this payment by telephone. *Compl.* [#1] ¶ 49; *Ex. L to Compl.* [#1-1] at 55-56. Finally, in the fourth letter, Defendant Ocwen solicited Plaintiffs to apply for a loan from the Home Affordable Modification Program ("HAMP"), after which Plaintiffs called and spoke with Allen Huet and Vandy Sears.[5] *Compl.* [#1] ¶ 50; *Ex. M to Compl.* [#1-1] at 57-58.

Plaintiffs assert that they communicated with Defendant Ocwen repeatedly by phone and email in connection with the HAMP loan process, but experienced the following: (1)

---

[4] Plaintiffs refer to Exhibit J to the Complaint here, but Exhibit J [#1-1] at 51-52, does not appear to relate to this allegation. Exhibit J, [#1-1] at 51-52, instead appears to be a duplicate of Exhibit K, [#1-1] at 53-54.

[5] Allen Huet and Vandy Sears appear to be Ocwen representatives, although Plaintiffs do not explicitly say so. *See Compl.* [#1] ¶ 50.

they were placed on hold and left there interminably; (2) they were told that the person they had called would not be available or had left the company; (3) they were told their application papers had been misplaced and that they needed to resubmit them; (4) they were repeatedly told that they needed to submit additional information which they had previously submitted but which could not be found by Defendant Ocwen. *Compl.* [#1] ¶ 51. In short, Plaintiffs allege that "[th]ey were continuously stonewalled in their attempts to establish a dialogue" with Defendant Ocwen. *Id.* Plaintiffs assert that "[t]he end result of this stonewalling was that [Plaintiffs were] never able to complete the HAMP transaction for which they were qualified." *Id.*; *Ex. N to Compl.* [#1-1] at 59-61.

In mid-December 2013, Defendant Ocwen sent Plaintiffs another undated demand letter. *Ex. O to Compl.* [#1-1] at 62-63. On January 6, 2014, Defendant Ocwen again returned a payment made by Plaintiffs despite their having agreed to this payment by telephone. *Ex. P to Compl.* [#1-1] at 64-65. Between December 16, 2013, and February 4, 2014, Plaintiffs corresponded by email with Defendant Ocwen, attempting to resolve the escrow situation whereby Defendant Litton first and later Defendant Ocwen continued to collect payments for a forced insurance policy and tax payments, despite the fact that Plaintiffs had informed Defendants Litton and Ocwen that Plaintiffs had their own insurance and that they were making these payments on their own. *Compl.* [#1] ¶ 54. Plaintiffs attempted to get accounting information, escrow balance information, payoff information, and HAMP refinancing information from Defendant Ocwen, but there was "always a reason" why there was no progress. *Ex. Q to Compl.* [#1-1] at 66-73.

On February 4, 2014, Plaintiffs sent a Qualified Written Request ("QWR") to Defendant Ocwen pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C.

§2605(e) ("RESPA"). *Ex. R to Compl.* [#1-1] at 74-78. The QWR contained thirty-five specific requests for information. *Id.* On March 1, 2014, Ocwen responded to the QWR with an "entirely inadequate" seven-page response. *Compl.* [#1] ¶ 56. Plaintiffs assert that only a small number of their requests received an adequate response. *Id.* On May 12, 2014, Defendant U.S. Bank as Trustee generated a Notice of Election and Demand for Sale by Public Trustee. *Ex. S to Compl.* [#1-1] at 79-80.

Ultimately, Plaintiffs assert that the original Deed of Trust and Note should have remained in the custody of Chase, and that the original documents should have been transferred to U.S. Bank as Trustee when the Deed of Trust and Note were incorporated into the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-MXI (the "C-BASS Certificates"). *Id.* at 14 ¶ 36. Plaintiffs assert that, instead, Chase did not retain the original Deed of Trust and Note, and that U.S. Bank as Trustee did not receive the original documents when they were incorporated into the C-BASS Certificates. Plaintiffs assert that Defendants' alleged misconduct with respect to these documents is part of a pattern and practice of predatory lending, in which Defendants made loans they knew or should have known could not be repaid, thereby exposing financially unsophisticated borrowers to unwarranted risk of default and foreclosure. *Compl.* [#1] ¶ 58. Plaintiffs assert that the purpose of entering into the above-described mortgage loan transaction was for Plaintiffs to eventually own the Property in fee simple, but that this purpose was knowingly and intentionally thwarted and made impossible by Defendants' actions. *Id.* ¶ 59.

Based on the alleged foregoing conduct, Plaintiffs assert six claims: (1) slander of title, against all Defendants, *id.* ¶¶ 60-67; (2) fraud, against all Defendants, *id.* ¶¶ 68-83; (3) wrongful foreclosure, against Defendants Ocwen and U.S. Bank as Trustee, *id.* ¶¶ 84-112;

(4) breach of the covenant of good faith and fair dealing, against all Defendants, *id.* ¶¶ 113-22; (5) quiet title, against Defendant U.S. Bank as Trustee, *id.* ¶¶ 123-28; and (6) declaratory relief "in the form of a postponement of the mandated Rule 120 hearing until this matter has been adjudicated in federal court," against all Defendants, *id.* ¶¶ 129-34. Plaintiffs seek compensatory damages, punitive damages, restitution, an order quieting title, declaratory relief, attorney's fees, costs, and pre-judgment interest. *Id.* at 28-30.  In the Motions [#13, #14], Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  Standard of Review

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action

will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  (citation omitted).    That said, "[s]pecific facts are not necessary[.  Instead,] the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 (internal citation and quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

The parties appear to agree that Colorado law applies to this lawsuit.  The Deed of Trust provides that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located."  *Ex. A to Compl.* [#1-1] at 12.  The Property is located in Colorado.  *Compl.* [#1] ¶ 28.

### III.  Analysis

**A.**    **Defendant Chase's Motion [#14]**

**1.**    **Slander of Title**

A claim for slander of title must allege four elements: (1) slanderous words, (2) falsity, (3) malice, and (4) special damages. *Mackall v. JPMorgan Chase Bank, N.A.*, __ P.3d __, __, 2014 WL 4459624, at *7 (Colo. App. Sept. 11, 2014). "Special damages exist when there was some effect on the owner's ability to sell the property." *Id.* "To show special damages, '[a]t a minimum, the property must be on the market for sale, and the tort must create a cloud upon the title; then the expense of legal proceedings to remove the cloud on title satisfies the damages requirement.'" *Id.* (quoting *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 131 (Colo. App. 2007)).

The Complaint alleges that Defendants "affect[ed] the marketability of the Property" by recording certain documents that were "the proximate cause of pecuniary loss or damage" to Plaintiffs. [#1] ¶¶ 62, 67. However, as in *Mackall v. JPMorgan Chase Bank, N.A.*, 2014 WL 445624, at *7, "[i]mportantly, the [C]omplaint fails to allege that the property was on the market for sale. Therefore, the [C]omplaint fails to allege special damages," and this claim is properly dismissed.

Accordingly, the Court **recommends** that Plaintiffs' claim for slander of title against Defendant Chase be **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

## 2.    Fraud

Defendant Chase asserts that this claim is barred by the statute of limitations. *Motion* [#14] at 9-10.  Under Colorado law, a three-year statute of limitations applies to

claims for fraud and concealment. Colo. Rev. Stat. § 13–80–101(1)(c). This lawsuit was filed on October 3, 2014. *Compl.* [#1]. The last action alleged by Plaintiffs that is attributable to Defendant Chase occurred on February 5, 2007, i.e., much longer than three years before the Complaint was filed on October 3, 2014. *See Ex. D to Compl.* [#1-1] at 28-30; *Compl.* [#1]. Thus, the statute of limitations applies here to bar Plaintiffs' claim.

Plaintiffs argue, however, that the statute of limitations was equitably tolled until March 18, 2014.[6] "[W]hen the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). However, equitable tolling does not apply when the plaintiffs are aware of the facts necessary to bring a claim before expiration of the statute of limitations. *See, e.g.*, *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999). Here, there is no assertion in the Complaint that Plaintiffs did not have copies of the Deed of Trust, the Note, and the Notice of Assignment, Sale or Transfer of Servicing Rights. *See Exs. A-C* [#1-1] at 1-27; *Compl.* [#1] at ¶¶ 69-70. Plaintiffs' mere assertion that they were unaware of the legal implication of the language in these documents and of the events alleged does not provide a basis for tolling the statute of limitations. *See Pursley v. Estep*, No. 05-cv-01767-PSF-MEH, 2006 WL 3097190, at *14 (D. Colo. Oct. 31, 2006) ("Any ignorance of the legal basis for [Plaintiff's] claims is insufficient to establish grounds for equitable tolling.") (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)). There are no allegations that

---

[6] It is unclear why March 18, 2014 is significant, but it may be when Plaintiffs first contacted legal counsel, as the crux of Plaintiffs' argument appears to be that they were unaware of the legal implications of the facts relating to the incidents underlying this lawsuit.

Plaintiffs were unaware of the facts underlying this claim until after the statute of limitations expired.  Thus, the Court finds that Plaintiffs have failed to sufficiently allege a basis for equitably tolling the 3-year statute of limitations on their fraud claim.

Accordingly, the Court **recommends** that Plaintiffs' fraud claim against Defendant Chase be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

### 3.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert that Defendant Chase "breached the implied covenant of good faith and fair dealing by not stating its servicing rights in the Deed of Trust and Note, and by transferring the servicing rights to JPMorgan Bank without the apparent standing to do so." *Response* [#16] at 10.

"Every contract in Colorado contains an implied duty of good faith and fair dealing." *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015) (citation omitted).  "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract."  *Id.* (quoting *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006)). A plaintiff is only permitted to rely on this duty "when the manner of performance under a specific contract term allows for discretion on the part of either party."  *McDonald*, 348 P.3d at 967 (citation omitted).  "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation."  *Id.* (quoting *City of Golden*, 138 P.3d at 292 (citation omitted)).

"Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'"  *McDonald*, 348

P.3d at 967 (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (citation omitted)). "Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance." *McDonald*, 348 P.3d at 967 (citation omitted). "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached." *Id.* (citation omitted). The implied duty of good faith and fair dealing cannot, "[h]owever, . . . contradict terms or conditions for which a party has bargained." *Id.* (quoting *Amoco Oil Co.*, 908 P.2d at 498 (citation omitted)). "Nor does the duty . . . inject substantive terms into the parties' contract." *McDonald*, 348 P.3d at 967 (quoting *Amoco Oil Co.*, 908 P.2d at 507 n.6 (internal quotation marks omitted)). "Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." *McDonald*, 348 P.3d at 967 (quoting *Amoco Oil Co.*, 908 P.2d at 507 n.6 (internal quotation marks omitted)).

Plaintiffs argue that Defendant Chase did not state its servicing rights in the Deed of Trust or Note, and that Chase therefore did not have standing to transfer servicing rights to another entity. *Id.* at 10. In other words, Plaintiffs appear to be arguing that in order for Chase to transfer servicing rights, the contract had to explicitly allow it to do so. Plaintiffs assert that the contract did not explicitly give Chase this right. However, the language of the contract belies this assertion: "There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note." *Ex. A to Compl.* [#1-1] at 13 ¶ 20. This language explicitly encompasses Chase's contractual right to transfer servicing of the loan. Indeed, Chase immediately exercised this right by transferring the loan servicing rights to JPMorgan on the same day when the Deed of Trust and Note were executed. *Ex. C to Compl.* [#1-1]

at 25-27.

Plaintiffs argue that the Deed of Trust "is ambiguous as to whom the Lender received the payments from; the instruments and payments could have been received by the Lender directly or through a servicer." *Response* [#17] at 7.[7] However, "[t]erms used in a contract are [only] ambiguous when they are susceptible of more than one reasonable interpretation." *Gagne v. Gagne*, 338 P.3d 1152, 1163 (Colo. App. 2014). "If a contract is ambiguous, the determination of the parties' intent is a question of fact." *Id.* Here, though, Plaintiffs offer no alternative reading of the contract, i.e., while suggesting that the contract is ambiguous, Plaintiffs do not offer another reasonable interpretation of its language. "The mere fact that the parties disagree about the meaning or application of a provision in the context of other provisions does not make the contract ambiguous." *Snipes v. Am. Mut. Ins. Co.*, 134 P.3d 556, 558 (Colo. Ct. App. 2006). In the absence of more specific argument or any legal authority provided by Plaintiffs, the Court finds the only reasonable interpretation of the contract to be that payments were to be made to the lender, i.e. Chase, unless and until Chase conveyed to another entity the rights to service the loan.

Furthermore, a claim for breach of the implied duty of good faith and fair dealing *requires* that the allegedly breaching party exercise a contractual right of discretion. *McDonald*, 348 P.3d at 967 (citation omitted). Because Plaintiffs have not directed the Court's attention to any contractual right of discretion that was allegedly misused by Defendant Chase, their argument is inconsistent with a claim for breach of the covenant of good faith and fair dealing. In other words, to the extent Plaintiffs allege that Defendant

---

[7] Plaintiffs do not clearly explain why they believe this alleged ambiguity has legal significance, and the Court is aware of no reason.

Chase had no discretion to convey the servicing rights,[8] the Court notes that this assertion of a lack of discretion is inconsistent with a breach of the covenant of good faith and fair dealing in performing the contractual duty of loan servicing. *See Cockriel v. Allstate Ins. Co.*, No. 14-cv-01064-KLM, 2015 WL 3826790, at *7 (D. Colo. June 18, 2015).

Accordingly, the Court **recommends** that Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing against Defendant Chase be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 4.   Declaratory Relief

In the Complaint, Plaintiffs request declaratory relief on two issues.  First, Plaintiffs seek "declaratory relief in the form of a postponement of the mandated Rule 120 hearing until this matter has been adjudicated in federal court." *Response* [#16] at 11 (quoting *Compl.* [#1] ¶ 133).  Plaintiffs concede that this request is moot. *See Response* [#16] at 11.  Accordingly, the Court **recommends** that this portion of Plaintiffs' claim for declaratory relief be **dismissed as moot**.

Second, Plaintiffs seek "a declaration of rights and duties of the parties herein by the Court . . . to determine the actual status and validity of the mortgage loan transaction and any rights, duties, and/or obligations as to the enforcement of it." *Response* [#16] at 11 (quoting *Compl.* [#1] ¶ 132).  Plaintiffs assert that this claim applies to Defendant Chase because Defendant Chase "misrepresented itself as the initial servicer of the loan without a substantiating clause in the Deed of Trust or a separate documents [sic] so stating.  The

---

[8] Plaintiffs do not argue that Chase abused its discretion in deciding *to whom* servicing rights should be transferred.  In other words, Plaintiffs do not argue that JPMorgan was an unsuitable entity to assume servicing rights over their loan.

plaintiffs are requesting that the court make a declaratory statement to this effect." *Response* [#16] at 11.

Defendant Chase disclaims any present interest in the loan and states that it has not been involved in any foreclosure proceedings against the Property.  *Reply* [#28] at 11. Regarding the latter statement, Plaintiffs have not alleged any facts to establish that Defendant Chase was involved in any foreclosure proceedings against the Property. Regarding the former statement, Plaintiffs do not appear to explicitly argue that Defendant Chase has a present interest in the Property.   However, they do argue that Defendant Chase never had the right to transfer the servicing of Plaintiffs' loan.  This argument is irrefutably contradicted by the terms of the Deed of Trust and Note.  *See Ex. A to Compl.* [#1-1] at 1-21; *Ex. B to Compl.* [#1-1] at 22-24.  The Deed of Trust defines "Loan Servicer" as "the entity . . . that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."[9]  *Ex. A to Compl.* [#1-1] at 13 ¶ 20.  The Note clearly states that payments are to be made "to the order of the Lender.  The Lender is Chase Bank USA, N.A."  *Ex. B to Compl.* [#1-1] at 23 ¶ 1.  Plaintiffs have directed the Court's attention to no legal authority, and the Court is aware of none, mandating that a deed of trust or accompanying note must contain different language from that at issue here in order to designate a loan servicing entity.  Based on the plain language of the Note and

---

[9]  The term "Periodic Payment" is defined as "the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument."  *Ex. A to Compl.* [#1-1] at 3 ¶ O.  The term "Note" is defined as "the promissory note signed by Borrower and dated August 18, 2006 . . . ."  *Id.* at 3 ¶ E.  The term "Security Instrument" is defined as "[the Deed of Trust], which is dated August 18, 2006, together with all Riders to this document."  *Id.* at 3 ¶ A.

Deed of Trust, Defendant Chase is designated as the initial servicer of Plaintiffs' loan. Further, on the same date the Deed of Trust and Note were executed, i.e., August 18, 2006, Chase executed a document titled "Notice of Assignment, Sale or Transfer or Servicing Rights," which transferred the servicing rights to JPMorgan Bank, c/o Chase Home Finance LLC. *Ex. C to Compl.* [#1-1] at 25-27. That document states "Your present servicer is Chase Bank USA, N.A." and "Your new servicer will be JPMorgan Chase Bank, N.A." *Id.* at 26. Nothing could be clearer.

Given that Defendant Chase disclaims any interest in the loan or Property, and given the lack of non-conclusory allegations that Defendant Chase has any interest in the loan or Property, the Court finds that Plaintiff's request for declaratory judgment with respect to Defendant Chase fails to state a viable claim for relief.

Accordingly, the Court **recommends** that Plaintiff's request for declaratory judgment with respect to Defendant Chase be **dismissed with prejudice**. *See Reynoldson*, 907 F.3d at 127.

## B.    The Ocwen Defendants' Motion [#13]

### 1.    Slander of Title

For the same reasons discussed in Section III.A.1. above, i.e., lack of any allegation of special damages, the Court finds that Plaintiffs' claim against the Ocwen Defendants fails as well.

Accordingly, the Court **recommends** that Plaintiffs' claim of slander of title be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 2.    Fraud

Plaintiffs' fraud claim is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).   To state a claim of fraud under Colorado law, Plaintiff must allege: "(1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it is false; (3) ignorance on the part of the one to whom the representation is made of falsity; (4) representation made with intention that it be acted upon; [and] (5) representation resulting in damages."   *Navigators Specialty Ins. Co. v. Beltman*, No. 11-cv-00715-RPM, 2012 WL 5378750, at *6 (D. Colo. Nov. 1, 2012) (quoting *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987)).   Further, pursuant to Fed. R. Civ. P. 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

The basis for Plaintiffs' fraud claim is unclear.   To the extent Plaintiffs are attempting to allege fraud in the foreclosure process, they fail to allege many of the legal elements quoted above, and certainly do not allege that anyone knowingly made a false representation upon which they relied.   In addition, Plaintiffs fail to "set forth the who, what, when, where and how of the alleged fraud" and do not "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."   *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citations omitted).   As a result, Plaintiff's fraud claim should be dismissed pursuant to both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).   To the extent Plaintiffs are attempting to allege fraud in connection with their efforts to obtain a loan modification or to correct the escrow for tax and insurance payments, *see Compl.* [#1] ¶ 79, their claim suffers from the same defects.   Although they allege that certain actions by Defendants may have been unfair, they have not sufficiently

described how these actions were fraudulent.

Accordingly, the Court **recommends** that Plaintiffs' fraud claim against Defendants Ocwen, Litton, and U.S. Bank as Trustee be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 3.    Wrongful Foreclosure

In connection with this claim, Plaintiff seeks "[r]estitution by the return of all mortgage payments [Plaintiffs] made to [Defendants] beginning with the first payment made to them in 2006 . . . ." *Compl.* [#1] at 29.   However, Colorado does not recognize a claim for damages based on wrongful foreclosure. *Fick v. U.S. Bank Nat'l Ass'n*, No. 11-cv-03184-WYD-KLM, 2012 WL 5464592, at *6 n.9 (D. Colo. Sept. 10, 2012) (citing *Schwartz v. Bank of Am.*, No. 10-cv-01225-WYD-MJW, 2011 WL 1135001, at *4 (D. Colo. Mar. 28, 2011)).

Accordingly, the Court **recommends** that Plaintiffs' claim of wrongful foreclosure be **dismissed with prejudice**.   *See Reynoldson*, 907 F.2d at 127.

### 4.    Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' argument in support of this claim is meager and essentially simply refers the Court back to the Complaint. *See Response* [#17] at 11 (citing *Compl.* [#1] ¶¶ 113-122) (citing *id.* ¶¶ 47-54)).   Plaintiffs assert that Defendant Litton breached the covenant of good faith and fair dealing "by allegedly transferring the servicing rights to Ocwen without (1) recording any such transfer, and (2) without apparent standing to do so." *Compl.* [#1] ¶ 118. Plaintiffs further assert that Litton breached the covenant of good faith and fair dealing "by using its 'power position' in its relationship with the plaintiffs to hold them in a captive position regarding a loan modification and 'forced insurance.'" *Id.* ¶ 119 (citing *id.* ¶¶ 47-

54).  Defendant U.S. Bank as Trustee is not mentioned anywhere in the portions of the Complaint to which Plaintiffs direct the Court's attention in connection with this claim, except that Plaintiffs mention that "there is no document transferring beneficiary interest to U.S. Bank as Trustee, and consequently no authority to initiate the foreclosure sale." *Id.* ¶ 121.

Plaintiffs' claim against these Defendants suffers from the same defect discussed with respect to Plaintiffs' good faith and fair dealing claim against Defendant Chase.  *See* § III.A.3.  Plaintiffs cite to no applicable case law demonstrating how Defendants Litton, Ocwen, and U.S. Bank as Trustee breached the implied duty of good faith and fair dealing.  *See Response* [#17] at 11.  Rather, Plaintiffs merely rely on *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), for the proposition that Plaintiffs were "weaker" parties and that Defendants were "stronger" parties with respect to the contract.  *See Response* [#17] at 11; *Compl.* [31] at 26 nn. 2-3.  However, this general proposition does not provide support for or help explain how the implied duty of good faith and fair dealing was actually breached in these circumstances.

Plaintiffs argue that no party had the standing to transfer servicing rights to another entity, and that any such transfer should have been recorded.[10]  *Compl.* [#1] ¶ 118. However, as already noted, a claim for breach of the implied duty of good faith and fair dealing requires that the allegedly breaching party exercise a contractual right of discretion, *McDonald*, 348 P.3d at 967, Plaintiffs have not directed the Court's attention to any

---

[10] In a Response, Plaintiffs appear to assert that they have not made an argument regarding "recording," but because it is not clear that they have disclaimed this argument completely, the Court still briefly addresses it. *See* [#17] at 8.

contractual right of discretion that was allegedly misused by these Defendants.   As previously discussed in Section III.A.3., Plaintiffs' argument regarding whether the loan servicing could be transferred does not encompass a contractual right of discretion.[11] Hence, the argument is inconsistent with a claim for breach of the covenant of good faith and fair dealing.

In addition, to the extent Plaintiffs allege that these Defendants had no discretion over whether they were required to record any such transfer(s) between themselves, the Court notes that these allegations are inconsistent with a breach of the covenant of good faith and fair dealing.   *See Cockriel v. Allstate Ins. Co.*, No. 14-cv-01064-KLM, 2015 WL 3826790, at *7 (D. Colo. June 18, 2015).   Similarly, Plaintiffs' argument that a document should have been created evidencing the transfer of interest to Defendant U.S. Bank as Trustee also fails for the same reason.   Plaintiffs do not articulate how the alleged failure of Defendants to create such a document stems from a contractually-created right of discretion.   In other words, there is no indication that any contractual right of discretion was misused by Defendants.

Finally, the Court returns to Plaintiffs' argument regarding the alleged loan modification and "forced insurance."   *See Compl.* [#1] ¶¶ 47-54, 119.   In part, Plaintiffs state that "[f]or 51 days, the plaintiffs attempted to resolve the escrow situation wherein Litton and subsequently Ocwen continued to collect insurance payments for a forced insurance policy and tax payments, when the plaintiffs had informed Litton and subsequently Ocwen

---

[11]   As with Plaintiffs' good faith and fair dealing claim against Chase, Plaintiffs do not here argue that any subsequent loan servicing entity abused its discretion in deciding *to whom* servicing rights should be transferred.   In other words, Plaintiffs do not argue that these Defendants were unsuitable to assume servicing rights over their loan.

that they had their own insurance and that they were making these payments on their own." *Id.* ¶ 54. However, Plaintiffs do not direct the Court's attention to any contractual provision providing Defendants with a right to exercise discretion in connection with these actions, and the implied duty of good faith and fair dealing cannot contradict terms or conditions of the contract or inject substantive terms into the contract.[12] *See McDonald*, 348 P.3d at 967.

Accordingly, the Court **recommends** that Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing against Defendants Ocwen, Litton, and U.S. Bank as Trustee be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 5.    Quiet Title

Plaintiff's quiet title claim is asserted only as to Defendant U.S. Bank as Trustee. *Compl.* [#1] ¶ 128. Plaintiff asserts that Defendant U.S. Bank as Trustee does not have any right, title, estate, lien, or interest in the Property. *Id.* ¶ 124. However, nowhere in this claim do they assert that title to the Property should be quieted in Plaintiffs' names.

Quiet title actions are governed by Colo. R. Civ. P. 105. *Hinojos v. Lohmann*, 182 P.3d 692, 696 (Colo. App. 2008). Colo. R. Civ. P. 105(a) authorizes "[a]n action . . . brought for the purpose of obtaining a complete adjudication of the rights of all parties thereto, with respect to any real property and for damages, if any, for the withholding of possession." "The plaintiff in a quiet title action has the burden of establishing title superior to that claimed by the defendant." *Hinojos*, 182 P.3d at 697 (citing *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986)). "Thus, the plaintiff may not capitalize

---

[12] Besides this claim and the fraud claim (which, as discussed above, is not entirely clear, *see supra* § III.B.2.), Plaintiffs do not appear to assert any other claim directly seeking damages for the alleged insurance and tax overpayments. *See Response* [#17] at 11 (citing *Compl.* [#1] ¶¶ 113-122).

on the weakness of the defendant's claim to title, but can succeed only by establishing the strength of his or her own claim to title." *Hinojos*, 182 P.3d at 697 (citing *Sch. Dist. No. Six v. Russell*, 396 P.2d 929, 932 (Colo. 1964); *Fastenau v. Engel*, 270 P.2d 1019, 1020-21 (Colo. 1954); *Webermeier v. Pace*, 552 P.2d 1021, 1025 (Colo. App. 1976), *aff'd*, 563 P.2d 950 (Colo. 1977)). "Accordingly, if the facts fail to show that the plaintiff has title, he or she may not attack the sufficiency of the evidence on which the court adjudged title to be in the defendant." *Hinojos*, 182 P.3d at 697.

Plaintiffs allege that Defendant U.S. Bank as Trustee has no claim on the property, and request that the Court affirm this allegation. *Response* [#17] at 11. However, as *Hinojos v. Lohmann* makes clear, Plaintiffs must allege a factual predicate demonstrating that they are entitled to title to the Property, and not merely allege that Defendant U.S. Bank as Trustee is *not* entitled any rights to the Property. Here, the allegations make clear that the quitclaim deed to the Property is subject to the prior-recorded Deed of Trust, i.e., the Deed of Trust is superior to Plaintiffs' claim. There are no allegations that the Note underlying the Deed of Trust has been paid in full, that the Deed of Trust has therefore been extinguished and that title should therefore be quieted in Plaintiffs' name. *See Ex A to Compl.* [#1-1] at 14 ¶ 23 ("Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument [i.e., the Deed of Trust] and shall produce for Trustee, duly canceled, all notes evidencing debts secured by this Security Instrument."); *In re Estate of McCreath*, 240 P.3d 413, 422 (Colo. App. 2009) (stating that "a quitclaim deed is ineffective to transfer a title not vested in the transferor at the time of its execution"); *Willis v. Neilson*, 507 P.2d 1106, 1108 (Colo. App. 1973) (stating that "title under the quitclaim deed is subject to [a] previously perfected and recorded lien").

Accordingly, the Court **recommends** that Plaintiffs' quiet title claim against Defendant U.S. Bank as Trustee be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 6.    Declaratory Relief

Defendants Ocwen, Litton, and U.S. Bank as Trustee argue that the declaratory relief and legal implications of this case are similar to those in *Fick v. U.S. Bank National Association*, No. 11-cv-03184-WYD-KLM, 2012 WL 5464592 (D. Colo. Sept. 10, 2012). *Motion* [#13] at 31; *Reply* [#29] at 15.   Plaintiffs concede that "[t]here are, arguably, similarities between *Fick* and the within matter, but in substance they differ a great deal." *Response* [#17] at 12.   However, Plaintiffs do not explain what any of those differences might be or how they distinguish the present case from *Fick*. *See id.*  In *Fick*, as here, the plaintiff "challenge[d] Defendants' standing to foreclose on a mortgage lien secured by a Deed of Trust" on the plaintiff's property. *Fick*, 2012 WL 5464592, at *1.  In both this case and that one, the plaintiffs asserted that the defendants have no interest in the mortgage, and a declaratory judgment to that effect is appropriate. *See id.* at *1, 4; *Compl.* [#1] at ¶¶ 129-34; *Response* [#17] at 12.

Here, Plaintiffs appear to argue in part that any valid assignment must be recorded in order for the assignee to initiate foreclosure proceedings. *See, e.g.*, *Compl.* [#1] ¶ 118. However, contrary to Plaintiffs' assertions, Colo. Rev. Stat. § 38–38–101(6) requires only that proper indorsement or assignment be provided either by (1) the "qualified holder present[ing] the original evidence of debt or a copy thereof to the officer together with a statement in the certification of the qualified holder or [a] statement of the attorney for the

qualified holder" or (2) "a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located."  Colo. Rev. Stat. § 38–38–101(6). A plain reading of the statute indicates that an assignment need not be recorded in order to be "valid;" thus, Plaintiffs' argument lacks merit.  Moreover, to the extent that Plaintiffs argue that the chain of assignment between Defendant Chase and the other Defendants is invalid, there is case authority holding that Plaintiffs lack standing to assert this challenge because Plaintiffs were not parties to the assignments at issue.  See, e.g.,  *Cingolani v. BAC Home Loans Servicing, L.P.*, No. 11-15159, 2012 WL 3029829, at *3 (E.D. Mich. July 25, 2012) (citing *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 Fed. App'x 97, 102 (6th Cir. 2010)).  Regardless, Plaintiffs' first argument that lack of recording dooms the validity of any assignment is without merit.

Plaintiffs further argue that Defendants have not demonstrated how each entity in the chain of assignment came to be legal holders of the Note as the Note was transferred between various loan servicing entities.  The law does not require Defendants to do so. "Under Colorado law, a party . . . can establish standing to foreclose simply by complying with the requirements of Colo. Rev. Stat 38–38–101(1)(b)(II) . . . ."  *Rader v. Citibank, N.A.*, No. 14-cv-00784-CMA-BNB, 2014 WL 5152357, at *4 (D. Colo. Oct. 14, 2014).  "Colorado foreclosure law allows a holder of evidence of a debt to foreclose upon breach of the terms of the deed of trust."  *Id.* at *3.  "Under Colorado law, a promissory note is a negotiable instrument that is freely assignable."  *See* Colo. Rev. Stat. § 4–3–104.  Here, the Note was reassigned.  The Deed of Trust itself contemplated this scenario, stating that:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer")

that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.

*Ex. A to Compl.* [#1-1] at 13.

In addition, if an instrument is payable to the bearer, it may be negotiated to a holder by transfer of possession alone. Colo. Rev. Stat. § 4–3–201. The term "holder" also includes a "person in possession of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank." Colo. Rev. State. § 38–38–100.3(10)(c). Here, the Note was executed on Plaintiffs' behalf payable to the original lender. *See Ex. B to Compl.* [#1-1] at 23. The Note is endorsed in blank. *See id.* at 23 ("The Lender and anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'").

Thus, to the extent Plaintiffs have attempted to argue that Defendants must produce the original Note before they have standing to foreclose on the Property, this is incorrect. *See Compl.* [#1] ¶¶ 81, 126. Plaintiffs do not allege that they did not sign the Note or that they were not in default for failure to make payments under the terms of the Note. Instead, Plaintiffs claim that no Defendant may foreclose on the Property until they have been shown the original promissory note. However, as described above, Colorado does not require production of the original promissory note to initiate or complete a non-judicial foreclosure proceeding. *See* Colo. Rev. Stat. § 38–38–101(1)(b)(II). Rather, a qualified holder may initiate foreclosure proceedings by producing a certified copy of the promissory note so long as the qualified holder agrees to certain indemnity language and conditions. *See* Colo. Rev. Stat. § 38–38–101(1)(b)(II), (2)(a). Plaintiffs' Complaint contains no

allegation that the holder failed to produce a certified copy of the promissory note (only that U.S. Bank as Trustee does not have the original Note, *see Compl.* [#1] ¶ 41) or that the proper procedure for initiating foreclosure proceedings was otherwise not followed. *See Sneed v. PNC Bank, Nat'l Ass'n*, No. 10-cv-03016-REB-MJW, 2011 WL 7429423, at *4 (D. Colo. Sept. 7, 2011) (finding no merit to the plaintiff's argument on similar facts). Therefore, the Court finds that this argument is without merit.

Accordingly, the Court **recommends** that Plaintiff's claim for declaratory relief be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127; *see also Fick*, 2012 WL 5464592, at *6 (dismissing request for declaratory relief without prejudice).

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motions [#13, #14] be **GRANTED** and that the Complaint [#1] be **DISMISSED as outlined above**. Accordingly,

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review

by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

      Dated:  August 26, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge